# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MALCOM J. EASLEY**                                                                 **PLAINTIFF**
**ADC #158900**

**V.**                           **NO. 4:19-cv-00931-JM-ERE**

**CHARLOTTE GARDNER,** *et al.*                                                     **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections

This Recommendation for dismissal has been sent to Judge James M. Moody Jr. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.

### II.   Background

Plaintiff Malcom J. Easley, an Arkansas Division of Correction (ADC) inmate, filed this civil rights lawsuit without the help of a lawyer. *Doc. 2.* Mr. Easley claims that Defendant Madison M. Taliaferro, DDS, was deliberately indifferent to

his medical needs by failing to provide him with adequate dental care.[1] *Doc. 2.* Specifically, Mr. Easley asserts that on January 24, 2019, Dr. Taliaferro examined him at the Ouachita River Correctional (ORC) Unit but did not adequately treat two teeth that needed repair (tooth #8 and tooth #9). *Doc. 2.*

Dr. Taliaferro has now moved for summary judgment. *Doc. 48.* Mr. Easley has responded. *Docs. 52, 53.* The motion is now ripe for review.

### III.  Standard

In a summary judgment, the court rules in favor of a party before trial. A moving party is entitled to summary judgment if the evidence shows that there is no genuine dispute about any fact that is important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Medical Liability Mut. Ins. Co. v. Alan Curtis LLC*, 519 F.3d 466, 471 (8th Cir. 2008). When ruling on the motion for summary judgment, the court will view the evidence in a light most favorable to Mr. Easley. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). Still, Mr. Easley cannot rely on bare allegations and denials; instead, he must come forward with evidence to counter Dr. Taliaferro's evidence and show that

---

[1] The Court previously dismissed all other claims and Defendants. *Docs. 39, 40.*

there are disputed facts that can only be decided at trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

IV. **Factual History**

On January 13, 2019, Mr. Easley submitted a sick-call request explaining that a filling on his front tooth was loose and that two teeth need to be refilled. *Doc. 50-1, p.3*. The following day, staff identified tooth #9 as needing treatment. *Id.*

At his January 24, 2019 dental appointment, Mr. Easley asked Dr. Taliaferro to fill or repair both tooth #8 and tooth #9. *Doc. 50-1, p.4*. Mr. Easley reported that he was "not in pain." *Id.* Dr. Taliaferro noted that there was decay on the surface of both teeth but no swelling, infection, or any reports of pain. *Id.* Dr. Taliaferro recommended fillings for both problem teeth and noted that treatment would take place at Mr. Easley's next dental appointment. *Id.* Dr. Taliaferro told Mr. Easley that if he wanted further treatment, he would need to submit a sick-call request. *Id.* Mr. Easley did not see Dr. Taliaferro again. *Docs. 50-1; 50-3, p.2*.

On January 30, 2019, Mr. Easley had his teeth cleaned. *Doc. 50-1, p.5*. There is no notation of any complaint of pain or any other issues on that date. *Id.*

On February 2, 2019, Mr. Easley submitted a sick-call request reporting that tooth #8 had fallen out. *Doc. 50-1, pp.6-7*. Infirmary staff informed Mr. Easley that they did not have the bonding agent required to bond the tooth back in place. *Id.* Mr.

3

Easley reported that he was holding the tooth in place in hopes it could be reattached. *Id.*

The next day, Mr. Easley missed his infirmary appointment. *Doc. 50-1, pp.6-8.* According to Mr. Easley, he was not able to make the appointment because he was working and was not given a medical "lay-in" to attend the appointment. *Doc. 53, p.2.*

On February 3, 2019, Mr. Easley filed a grievance complaining about the lack of adequate dental care and stated that he was in pain. *Doc. 53, p.7.* On April 17, 2019, the ADC Director found Mr. Easley's appeal to have merit due to the continued delays in filling tooth #8 and tooth #9. *Doc. 53, p.10.*

On March 3, 2019, Mr. Easley reported to the infirmary with complaints of ear pain in windy conditions because of a burst eardrum. *Doc. 50-1, p.9.*

On April 22, 2019, Mr. Easley submitted a sick-call request, explaining that he had a root canal in 2010 and complaining that his front tooth cracked in half while he was waiting to receive a filling. *Doc. 50-1, p.11.* He complained that his mouth hurt when he was outside in the wind and requested that his missing tooth be bonded. *Id.* ADC officials referred him to a dentist. *Id.*

On May 7, 2019, Mr. Easley was transferred to Texarkana Regional Maintenance. *Doc. 50-1, p.12.* He was not taking any medication for pain or infection at the time of his transfer. *Doc. 50-1, p.13.*

On May 16, 2019, in response to his April 22 sick-call request, Mr. Easley had a dental appointment with Dr. Mark Mashburn in Texarkana. *Doc. 50-1, p.14.* Dr. Mashburn's notes indicate that tooth #8 was broken off at the gumline. *Id.* He placed a composite filling in the tooth after explaining to Mr. Easley that it was not possible to reattach the piece of tooth that he had brought with him. *Id.*

On September 6, 2019, Mr. Easley was transferred to the ADC's Maximum-Security Unit (MSU). *Doc. 50-1, pp.15-16.* He was not taking any medication at the time of his transfer. *Doc. 50-1, p.15.*

Mr. Easley's tooth #9 was eventually filled on October 15, 2019, at the MSU by a third dentist, Dr. Janell Nunn. *Doc. 50-1, p.25.* According to Dr. Nunn's notes, she explained to Mr. Easley that, to repair tooth #8, a post would have to be drilled into the root and a crown placed over the post. *Id.* That treatment is not offered at the ADC. *Id.*

On January 28, 2020, Dr. Nunn again discussed tooth #8 with Mr. Easley. *Doc. 50-1, p.26.* She noted that the root canal access to tooth #8 had been covered with composite. *Id.* She again noted that the ADC did not provide the treatment Mr.

Easley wanted; rather, he would have to seek this treatment after he was released from custody at his own expense. *Id.*

On March 2, 2020, Mr. Easley was seen by a fourth dentist, Dr. Ellen McDonald. *Doc. 50-1, p.27*. Dr. McDonald noted that Mr. Easley wanted #8 tooth restored. *Id.* She concluded, however, that the problem with tooth #8 appeared to be cosmetic. *Id.*

In support of the motion for summary judgment, Dr. Taliaferro produces the sworn declaration of Steven Stringfellow, a dentist licensed to practice in the state of Arkansas, who reviewed Mr. Easley's medical and dental records relating to Mr. Easley's dental treatment since January 2019. *Doc. 50-3*. Dr. Stringfellow testifies that Dr. Taliaferro appropriately placed Mr. Easley on a list for fillings because fillings are not generally performed at an evaluation appointment, particularly when there is no pain, swelling, or signs of infection. *Doc. 50-3, p.5*. Dr. Stringfellow testified:

> Tooth #8 was a nonrestorable tooth. In my dental opinion, there was nothing to be done to save that tooth when Dr. Taliaferro saw him or afterward; not even a quasi-crown made out of composite material. The filling performed on May 19, 2019, was to protect the root canal. Any additional services would have simply been cosmetic, as was explained to the patient on a few different occasions thereafter. The delay in receiving a filling on that tooth from the February 2 reported breakage until the May 19 filling, while not optimal, certainly did not cause him any harm. He had no nerve in that tooth. There was no swelling or infection. I have no idea why the patient would have

> perceived sensitivity to wind when outside, but it was not because of that tooth.
>
> While I am not pleased with the delay in Mr. Easley receiving his filling for tooth #9 – a delay which likely was caused by his transfers to different units – it is my dental opinion that he was not harmed by the delay in that filling. There is nowhere in the dental and medical records where he complained of pain . . . . Thus, there was never a need for pain medication or antibiotics.
> …
> In my professional opinion, Dr. Taliaferro provided appropriate dental care during his sole 2019 dental encounter with Mr. Easley on January 24, 2019.

*Doc. 50-3, pp.4-5.*

**V.    Discussion**

Deliberate indifference to a prisoner's serious medical needs is a kind of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a deliberate-indifference claim, Mr. Easley must show that Defendant Taliaferro knew of a serious medical need yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

An inadvertent or negligent failure to provide adequate medical care is different from deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Likewise, disagreement with treatment decisions cannot support a deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); see also

7

*Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (citing *Estelle*, 429 U.S. at 106). Stated another way, Dr. Taliaferro can be held liable only if his actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

At the summary judgment stage, Mr. Easley's unsupported assertions that Dr. Taliaferro was deliberately indifferent are insufficient. "'When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d 531, 539 (2000).

8

There is no evidence that Dr. Taliaferro provided constitutionally inadequate treatment on the one occasion he treated Mr. Easley. On January 24, 2019, Dr. Taliaferro recommended fillings for two of Mr. Easley's teeth (#8 and tooth #9) at his next dental appointment. While this did not happen, there is no evidence to suggest that Dr. Taliaferro was responsible for the subsequent delay that occurred.[2]

Mr. Easley has failed to come forward with evidence to create a fact question on whether Dr. Taliaferro was deliberately indifferent to his need for medical treatment.

## VI. Conclusion

The Court recommends that Dr. Taliaferro's motion for summary judgment *(Doc. 48)* be GRANTED and that all Mr. Easley's claims against Dr. Taliaferro be DISMISSED, with prejudice.

---

[2] Because there is no evidence that Dr. Taliaferro was responsible for the four-month delay in getting tooth #8 fille and the almost nine-month delay in getting tooth #9 filled, it is unnecessary to consider whether Mr. Easley suffered an unconstitutional delay in treatment. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (A prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). However, even if the Court did consider the delay in treatment, Mr. Easley has not come forward with any proof to show that the delay caused a detrimental effect on his prognosis. See *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (an inmate claiming that his medical care was inadequate because of a delay in treatment must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in treatment).

DATED this 9th day of June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE